IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-01490-DME-MJW

FEDWA KHALIK,

    Plaintiff,

vs.

UNITED AIR LINES,

    Defendant.

## DEFENDANT'S MOTION TO DISMISS

Pursuant to FED. R. CIV. P. 12(b)(6), Defendant United Air Lines ("United") moves to dismiss with prejudice the Complaint filed by Plaintiff Fedwa Khalik ("Ms. Khalik") for failure to state a claim upon which relief may be granted.

## I.   FACTUAL BACKGROUND.[1]

Ms. Khalik worked as a Business Services Representative for United at the time of her termination. Complaint ¶15. As a Business Services Representative, Ms. Khalik was a salaried, non-union, and non-management employee of United. Ms. Khalik is of Arab-American descent and she practices Islam. *Id.* ¶¶7, 13. She stated in her Complaint that she was "physically assaulted (grabbed by the arm) after being subjected to a false investigation and false criticism of her work." *Id.* ¶16. She also alleges that she was assaulted and "targeted" because of her race, religion, national origin, and heritage. *Id.* ¶16.

---

[1] United assumes, for purposes of this motion only, that the allegations made in Ms. Khalik's Complaint are true. In so doing, United does not waive its right to contest Ms. Khalik's factual allegations at a future stage of these proceedings.

Ms. Khalik alleges that she "complained internally about both discrimination at United . . . and being denied FMLA leave." *Id.* ¶17. She also asserts that she "complained about an email sent by a United Air Lines employee discussing a possible sexual liaison with an underage girl." *Id.* ¶18.[2]

Further, Ms. Khalik asserts that United "communicated to its employees . . . a promise that it would not discriminate against them on the bases complained about herein, or retaliate for reporting discrimination, nor retaliation for seeking FMLA leave." *Id.* ¶21. Ms. Khalik alleges that these "promises" constituted a contractual offer, and that Ms. Khalik's continued employment constituted her acceptance of that offer, thereby forming a "bargain" between United and Ms. Khalik. *Id.* ¶¶23-24. Thus, according to Ms. Khalik, United "breached the promise as described . . . by taking the actions described in the Complaint." *Id.* ¶28. Lastly, Ms. Khalik contends that she relied on such promises to her detriment, and that injustice can only be avoided by enforcing United's alleged promises. *Id.* ¶26.

Ms. Khalik filed her Complaint on June 24, 2010 asserting alleged claims for relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act ("FMLA"), "public policy of the State of Colorado," breach of contract, and "estoppel." Complaint, June 24, 2010, ¶¶32-36.

---

[2]Notably, Ms. Khalik reported sometime in 2008 that she had received an offensive email on her home computer. She reported the email to United, but when United asked her to provide a copy of the email, she said that she had deleted it. To date, Ms. Khalik has not produced the email to United.

-2-

## II.   ARGUMENT.

### A.   Legal Standard.

Prior to 2007, the standard applied to Motions to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) was that the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'"  *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n.1 (10th Cir.1994)).  Thus, until recently, a dismissal was only appropriate where "it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  *The Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  However, in 2007, the Supreme Court "decided that 'this famous observation has earned its retirement,' and it has prescribed a new inquiry . . . to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 570 (2007)).  In other words, plaintiffs must "nudge[] their claims across the line from conceivable to plausible" in order to survive a motion to dismiss.  *Twombly*, 550 U.S. at 570.  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *The Ridge at Red Hawk,* 493 F.3d at 1177 (emphasis in original).

"'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting

*Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S. Ct. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Further, in resolving a Motion to Dismiss under FED. R. CIV. P. 12(b)(6), a court may consider documents that are referred to in the complaint and are central to the plaintiff's claims without converting the motion into a motion for summary judgment under FED. R. CIV. P. 56. *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (Seymour, Magill, & Ebel, JJ.).

Lastly, claims that are dismissed pursuant to FED. R. CIV. P. 12(b)(6) may be dismissed with prejudice. *See De Payan v. Wend-Rockies, Inc.,* Civ. No. 07-cv-02520, 2008 WL 2168780 at *4 (D. Colo. May 21, 2008) (Babcock, J.) (granting dismissal where complaint in Title VII case was devoid of any fact in support of claim of discrimination and did not raise right to relief above speculative level).

    **B. Ms. Khalik Has Not Plead Sufficient Facts to State a Claim Upon Which Relief Can Be Granted Under Title VII.**

Ms. Khalik has completely failed to state a claim for discrimination or retaliation under Title VII. Apart from her own sweeping conclusions that United targeted her because of her race, religion, national origin, and ethnic heritage, she has not alleged any facts suggesting that United acted in a discriminatory matter or terminated her based on discriminatory motives. Likewise, Ms. Khalik's theory of retaliation under Title VII fails because it is based solely on

unsupported allegations that she was retaliated against for reporting unspecified discrimination. Thus, her claims under Title VII must be dismissed as a matter of law.

### 1. Discrimination Under Title VII.

Title VII provides that it is an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2009). To state a prima facie claim of discriminatory termination under Title VII, "a plaintiff must demonstrate that she (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged; and (4) her position was not eliminated after the discharge. *Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1150 (10th Cir. 2008) (Tacha, Ebel, & Kane, JJ.). However, the "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick v. Penske Transport Services, Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (Ebel, Kelly, & Ellison, JJ.).

In support of her claim of discrimination under Title VII, Ms. Khalik provides only speculative, generalized, and conclusory allegations which, taken together, do not suggest any plausible claim for discrimination on the basis of race, religion, national origin, or "ethnic heritage."[3] For example, the Complaint simply alleges that Ms. Khalik was physically assaulted and subjected to a "false investigation and false criticism of her work," and that she was

---

[3]Title VII does not even identify "ethnic heritage" as a protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (2009) (Title VII prohibits employer discrimination on the basis of "race, color, religion, sex, or national origin.").

"targeted because of her race, religion, national origin, and ethnic heritage." Complaint ¶16. Apart from this broad, conclusory statement, Ms. Khalik has not alleged any specific facts that demonstrate that she was treated differently than non-Arab-Americans or non-Muslims, or that her termination occurred "under circumstances which give rise to unlawful discrimination." *Kendrick v. Penske Transportation Services*, 220 F.3d at 1227; *see also De Payan,* 2008 WL 2168780 at *4 (granting motion to dismiss discrimination claim; plaintiff merely stated she had complained of discrimination based on national origin shortly before her termination; such an allegation consisted "solely of a conclusory contention" that was "clearly factually insufficient to provide [the court] with reason to believe that Plaintiff has a reasonable likelihood of mustering factual support for her claim of discrimination based on national origin."). The fact that Ms. Khalik is Arab-American, practices Islam, and was terminated by United does not support a plausible finding of discrimination under Title VII. Such "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a claim for relief under FED. R. CIV. P. 12(b)(6) and, therefore, Ms. Khalik's claim of discrimination under Title VII must be dismissed. *See Twombly*, 550 U.S. at 555.

### 2. Retaliation Under Title VII.

Ms. Khalik also has failed to allege a factual basis for a cognizable action for retaliation under Title VII. Title VII forbids retaliation against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2009). To state a prima facie claim for retaliation, a plaintiff must prove "(1) she engaged in protected opposition to Title VII discrimination or

participated in a Title VII proceeding; (2) she was disadvantaged by an action of her employer subsequent to or contemporaneously with such opposition or participation; and (3) *there is a causal connection between the protected activity and the adverse employment action.*" *Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982) (emphasis added). Unless an employer's adverse action is "very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation." *Landrey v. City of Glenwood Springs*, Civ. No. 03-cv-01299, 2006 WL 726634 at *15 (D. Colo. March 22, 2006) (Nottingham, J.) (quoting *Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004)).

Ms. Khalik's entire retaliation claim is based on one factual allegation: "Plaintiff complained internally about both discrimination at United Air Lines and being denied FMLA leave." Complaint ¶17. She also invokes this Court's jurisdiction under Title VII due to United's alleged "wrongful termination because of race, religion, national origin, ethnic heritage *and for retaliation because she reported discrimination.*" *Id.* ¶1 (emphasis added). Ms. Khalik makes absolutely no effort to allege facts that could conceivably show a causal connection between her alleged internal reports of discrimination and her subsequent termination. Likewise, the Complaint does not assert any facts whatsoever to show any kind of temporal proximity between her alleged internal reports of discrimination and her subsequent termination. Such "unsupported allegation[s] that she was retaliated against for complaining about unspecified discrimination" are not a sufficient factual basis to state a retaliation claim under Title VII. *See De Payan,* WL 2168780 at *5. Thus, Ms. Khalik's retaliation claim is based on the thinnest of

conclusory allegations and should be dismissed, as it is entirely insufficient to state a claim upon which relief may be granted under FED. R. CIV. P. 12(b)(6).

### C. Ms. Khalik Has Not Plead Sufficient Facts to State a Claim Upon Which Relief Can Be Granted Under the FMLA.

Ms. Khalik alleges that United violated the Family and Medical Leave Act ("FMLA") because United "retaliated against [her] for seeking FMLA leave." Complaint ¶1. However, her claim for retaliation under the FMLA is just as flawed as her claim for retaliation under Title VII, because it relies on broad, sweeping legal conclusions with absolutely no factual support to show that the claim is plausible on its face.

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's rights to use leave pursuant to the FMLA. 29 U.S.C. § 2615(a)(1) (2009). Likewise, it is unlawful for an employer to discriminate or retaliate against an employee based on the employee's use of leave under the FMLA. 29 U.S.C. § 2615(a)(2) (2009). An employee who alleges retaliation under the FMLA must prove a prima facie case for retaliation by establishing that (1) she availed herself of a protected right under the FMLA; (2) the employer took an action that a reasonable employee would have found to be materially adverse, and; (3) *there is a causal connection between the two actions*. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (Porfilio, Ebel, & Herrera, JJ.) (emphasis added). Just as with claims for retaliation under Title VII, the "critical inquiry" at the prima facie stage in FMLA retaliation claims is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination." *Wood v. Handy & Harman Co.*, No. 054-cv-

532, 2006 WL 3228710 at *5 (N.D. Okla. Nov. 6, 2006) (Kern, J.) (quoting *Metzler,* 464 F.3d at 1171).

Again, the entire basis for Ms. Khalik's FMLA retaliation claim is that she "complained internally about both discrimination . . . and being denied FMLA leave." Complaint ¶17. She invokes this Court's jurisdiction "pursuant to the Family and Medical Leave Act . . . for being retaliated against for seeking FMLA leave." Complaint ¶1. These threadbare allegations are entirely insufficient to state a plausible claim for relief under the FMLA. *See Wiseman v. Wal-Mart Stores, Inc.*, No. 08-1244, 2009 WL 1617669 at *3 (D. Kan. June 9, 2009) (Melgren, J.) (motion to dismiss the plaintiff's retaliation claim under the FMLA was granted because "[c]onclusory statements in a Complaint are insufficient to state a claim on which relief can be granted."). Like her claim for retaliation under Title VII, her claim for retaliation under the FMLA rests on unsupported allegations of discrimination based on unspecified attempts to seek FMLA leave at some undefined point. Ms. Khalik's FMLA retaliation claim fails under FED. R. CIV. P. 12(b)(6) and the requirements of *Twombly*. Therefore, it must be dismissed.

**D.     Ms. Khalik's Claim for Wrongful Termination Against Public Policy Must Be Dismissed Because Ms. Khalik Has Not Alleged Facts Showing that United Terminated Her for Failing to Comply With an Order or Directive From United That Was Illegal or in Breach of Public Policy.**

Ms. Khalik's third claim for relief alleges that United "breached the public policy of the State of Colorado." Complaint ¶35. Again, however, Ms. Khalik's Complaint does not even come close to alleging a plausible claim for relief for wrongful termination against public policy; therefore, it must be dismissed for failure to state an actionable claim.

In Colorado, absent an agreement stating otherwise, the relationship between an employer and an employee is "at will," meaning that absent a specific term of employment,

either the employer or the employee may terminate the employment relationship at any time. *Continental Airlines v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). One exception to this rule is the tort of wrongful discharge in violation of public policy, as recognized in *Martin Marietta v. Lorenz*, 823 P.2d 100 (Colo. 1992). Under this exception, an employee may be entitled to relief from a discharge if the employee can show that:

> [T]he employer directed the employee to perform an illegal act as part of the employer's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; and that the employee was terminated as the result of refusing to perform the act directed by the employer.

*Id.* at 109. Likewise, the employee must show that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to statutory policy relating to the employee's duties as a citizen, or violative of the employee's legal right or privilege as a worker. *Id.*

Based on the Colorado Supreme Court's holding in *Marietta*, it is clear that the employee must be discharged for failing to comply *with an employer's order or directive* that violates a specific law or public policy in some way. *See id.* (public policy exception applies to situations in which the *employer* directs the employee to commit an illegal act or prohibits the employee from performing a public duty or exercising an important *job-related* right or privilege, and the employee refuses to comply with the employer's order). By contrast, Ms. Khalik's entire wrongful termination against public policy claim is based on the following allegations: "[Ms.

Khalik] complained about an e-mail sent by a United Air Lines employee discussing a possible sexual liaison with an underage girl (which constituted a threat of criminal violation endangering the public)" and that, on November 29, 2009, she was terminated.  Complaint ¶¶18, 19.  Even assuming that the email exists, that the allegations within it are true, and that Ms. Khalik complained of the email to United at some point in time related to her date of termination, there is nothing within the Complaint that even *suggests* that United somehow tried to prevent her from bringing this information to light to the proper authorities.  In other words, Ms. Khalik has not alleged that United ordered her to do or not do something.  She does not allege that United tried to prevent Ms. Khalik from exposing this email.  She does not allege that her refusal to comply with United's unlawful order resulted in her termination.  She alleges no facts linking the complaint about the email to her termination.  And she cites no specific source for the public policy allegedly violated by United.  Thus, her claim for wrongful termination against public policy must be dismissed as a matter of law.  *See Johnson v. E. A. Miller, Inc.,* 172 F. 3d 62, 1999 WL 94827 *4-5 (10th Cir. 1999) (Utah law) (affirming dismissal of public policy wrongful discharge claim; employee alleged she reported criminal violation to employer rather than to public authorities; such disclosure did not serve the public interest and could not implicate clear and substantial public policy).

### E. Ms. Khalik's Claims of Breach of Implied Contract and Promissory Estoppel Must Be Dismissed Because There Was Neither an Employment Contract Between United and Ms. Khalik, Nor Any Promise By United Upon Which Ms. Khalik Could Reasonably Rely to Her Detriment.

Ms. Khalik has also alleged that her termination was in breach of an implied contract and, alternatively, that United was estopped from terminating Ms. Khalik based on a theory of promissory estoppel.  Complaint ¶¶35-36.  However, Ms. Khalik's claims must fail because she

has not plead sufficient facts to show that United and Ms. Khalik entered into any sort of employment contract or that United made any sort of promise that Ms. Khalik could rely on to her detriment.

### 1. Breach of Implied Contract.

Regarding Ms. Khalik's claim of breach of implied contract, the Colorado Supreme Court has recognized that an employee-at-will may be able to bring an action for wrongful discharge when the employee can prove that the employer's promulgation of termination procedures was an offer, and that the employee's continued employment constituted acceptance of and consideration for those binding procedures. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). The "offer" contained within the employee handbook must contain terms "sufficiently definite to enable the court to determine whether a contract has been formed." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (quoting *Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960)).

While the existence of an implied contract is often a fact question for a jury, the issue may be decided as a matter of law if the alleged offers are nothing more than "vague assurances." *Vasey,* 29 F.3d at 1464. For example, when a policy includes general statements to the effect that an employer is committed to "the dignity and privacy due all human beings" and to "provide equal employment . . . regardless of race, sex, age, handicap, religious belief, honorable military status or national origin," such statements are simply "vague assurances" and are too indefinite to constitute a contractual offer. *Vasey,* 29 F.3d at 1465.

Ms. Khalik's Complaint references United's communications to its employees, in which it allegedly "promise[d] that it would not discriminate against them" on the bases of race,

religion, or national origin, "or retaliate for reporting discrimination, nor retaliation for seeking

FMLA leave."  Complaint ¶21.  Ms. Khalik ostensibly relies on United's Policy Against

Harassment and Discrimination ("the Policy"), submitted as Exhibit A to this Motion.[4]  The

Policy provides that:

> In keeping with our corporate commitment to equal employment
> opportunity, it is Company policy to forbid harassment and
> discrimination based on race, color, sex (including pregnancy),
> age, religion, national origin, disability, veteran status, sexual
> orientation, or any other characteristic protected under applicable
> international, federal, state, or local law.  The Company believes
> that everyone should be treated with respect and dignity, in
> accordance with our corporate values.  Harassment and
> discrimination – whether verbal, physical, or visual – violate both
> Company policy and the law.  Our commitment to our employees
> is to appropriately respond to harassment and discrimination based
> upon any of the characteristics listed above, regardless of whether
> or not the allegations amount to a violation of the law.

Exhibit A at *2.  The Policy also prohibits retaliation for making good faith claims of

discrimination, opposing discrimination, or assisting with a discrimination investigation.  *Id.* at 5.

Lastly, the Policy reiterates United's position regarding discrimination and retaliation within its

"Corporate Values," in which United states its commitment to "ensuring that employees respect

one another as individuals."  *Id.* at *6.

These statements within the Policy are exactly the sort of "vague assurances" that cannot

give rise to an offer to enter into an implied contract.  *See Vasey,* 29 F.3d at 1464; *see also*

*Haynes v. Level 3 Communications, LLC.*, 167 Fed. Appx. 712, 715 (10th Cir. 2006) (an open

door policy that encouraged employees to raise issues with management and prohibited

---

[4]Based on the language of her Complaint, the Policy is central to Ms. Khalik's breach of implied contract and promissory estoppel claims and, therefore, converting this Motion into a motion for summary judgment under FED. R. CIV. P. 56 is not required.  *See* Complaint ¶¶ 21-28; *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (Seymour, Magill, & Ebel, JJ.).

retaliation constituted "vague assurances"); *Dupree v. United Parcel Service, Inc.*, 956 F.2d 219, 222 (10th Cir. 1992) (policy manual that provided that the defendant would treat people fairly and without favoritism constituted "vague assurances" that could not form the basis of an implied contract); *Soderlun v. Public Service Co. of Colorado*, 944 P.2d 616, 621 (Colo. Ct. App. 1997) (statements within a code of business conduct enjoining employees to "observe high ethical and moral standards" constituted "vague assurances"); *Hardenbrook v. United Parcel Service, Co.*, No. CV07-509-S-EJL, 2009 WL 4798049 at *10 (D. Idaho Dec. 8, 2009) (Edward, J.) (a promise by the employer to not retaliate against employees for reporting violations of company regulations constituted "vague assurances" and could not create an enforceable contract right). The Policy is simply designed to outline United's stance on discrimination and harassment and what employees may do if confronted with discrimination or harassment. Thus, Ms. Khalik cannot rely on the Policy at issue or other generalized statements regarding United's policy towards discrimination to argue that United and Ms. Khalik entered into some sort of implied contract; her claim of breach of contract must be dismissed.

### 2. Promissory Estoppel.

Alternatively, Ms. Khalik alleges that United was estopped from terminating her because she "reasonably relied on the aforesaid promises to her detriment, and injustice can be avoided only by enforcement of the promises." Complaint ¶26. However, her promissory estoppel claim must fail because United's Policy regarding discrimination does not constitute the sort of "promise" that Ms. Khalik could have reasonably relied on to her detriment.

Under Colorado law, if a discharged employee fails to show the existence of an implied contract, the employee may sometimes enforce an employment manual and its procedures under

a promissory estoppel theory. *Vasey,* 29 F.3d at 1466. To prevail on a claim of promissory estoppel, the employee must show that (1) the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow policies contained in the manual, (2) the employee reasonably relied on the termination procedures to his detriment, and (3) that injustice can be avoided only by enforcement of the termination procedures. *Id.* (citing *Continental Air Lines*, 731 P.2d at 712). "Unless this preliminary factual showing is sufficient to overcome the presumption of an employment terminable at the will of either party, the employee's cause of action should fail." *Continental Air Lines*, 731 P.2d at 712.

The "promise" that Ms. Khalik allegedly relied upon to her detriment was that United would not discriminate against her on the basis of race, religion, or national origin, "or retaliate for reporting discrimination, [or] retaliate for seeking FMLA leave." Complaint ¶21. However, "[w]ithout some detailed employment terms or a guarantee of employment, equal opportunity statements are not enforceable promises." *Haynes,* 167 Fed. Appx. at 715-16. Further, an employer's promise to abide by all applicable employment laws relating to discrimination "is completely illusory – the employer is required to abide by the laws whether it promises to or not." *Endahl v. Vinnel Corp.*, 04-cv-00426, 2006 WL 57496 at *9 (D. Colo. Jan. 10, 2006) (Krieger, J.). United's Policy provides that it will prohibit discrimination based on "any . . . characteristic protected under applicable international, federal, state or local law." Exhibit A at *2. Accordingly, by agreeing to comply with anti-discrimination laws, United did not commit itself to perform some act that it was not already required to do. *See Endahl*, 2006 WL 57496 at *9. "At best, a promise of non-discrimination is a statement of the employer's policies." *Id.*

Thus, Ms. Khalik has failed to identify any cognizable "promise" that United made and on which she reasonably relied to her detriment. Her claim based on a theory of promissory estoppel must be dismissed.[5]

## III.   CONCLUSION.

All of Ms. Khalik's claims are based on threadbare legal conclusions that do not set forth a single fact that could give rise to a plausible claim for relief. Her wrongful discharge claim based on an unspecified public policy should be dismissed, for failing to allege the requirements of such a claim under Colorado law and her inability to prove an actionable claim based on an internal complaint of alleged criminal behavior. Ms. Khalik's breach of an implied contract claim is flawed because she alleges no specific enforceable employment contract between herself and United. Similarly, her promissory estoppel claim must be dismissed because she alleges no enforceable "promise" upon which she could have reasonably relied to her detriment.

The Supreme Court's holding in *Twombly* was specifically meant to address faulty and unsubstantiated complaints like the one filed by Ms. Khalik in this case. Accordingly, because Ms. Khalik has failed to sufficiently allege any facts that could give rise to a plausible claim for relief, and she has failed to state actionable claims, United respectfully requests that this Court dismiss her Complaint in its entirety, as a matter of law, and with prejudice..

Dated: August 13, 2010.

---

[5]It is also worth noting that Khalik's allegations relating to her implied contract and promissory estoppel claims are almost a word-for-word recitation of the elements of contract and promissory estoppel claims set forth in *Vasey* and *Continental Air Lines*. *See* Complaint ¶¶21, 25-26. Accordingly, these claims are also insufficient based on the principles of *Twombly* and FED. R. CIV. P. 12(b)(6). *See Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

Respectfully submitted,

s/Judith A. Biggs_____
Judith A. Biggs
Holland & Hart LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, CO 80302
Telephone: (303) 473-2707
Fax No.: (303) 975-5344
jbiggs@hollandhart.com

s/Emily Hobbs-Wright _____
Emily Hobbs-Wright
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado  80201-8749
Telephone: (303) 295-8584
Fax No.: (303) 295-8261
ehobbswright@hollandhart.com

**ATTORNEYS FOR DEFENDANT**

-18-

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2010, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following email address:

> John R. Olsen
> olsenbrown@comcast.net

                                              s/Resa Haskell

4881544_2.DOC